UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WALGREEN CO.,

                        Plaintiff,

v.

MERITUS MEDICAL CENTER, INC.,

                        Defendant.

Civil No.: 1:22-cv-01151-JRR

## MEMORANDUM OPINION

This matter comes before the court on Defendant Meritus Medical Center, Inc.'s (hereafter "Meritus") Motion to Dismiss.  (ECF 9; the "Motion.")  The court has reviewed all motions papers.[1]  No hearing is necessary.  Local Rule 105.6  (D. Md. 2021).

### BACKGROUND

Plaintiff Walgreen Co. (hereafter "Walgreens") operates a pharmacy in the Robinwood Medical Campus Suite 105 pursuant to a lease agreement, a lease amendment, and a second lease

---

[1] Defendant argues that Exhibits 4 and 5 to Plaintiff's opposition may not be considered because they are extrinsic to the complaint.  Although the extrinsic materials are submitted by Plaintiff and not Defendant, the court is guided by the law on consideration of extrinsic documents attached to a motion to dismiss.  In ruling on a motion to dismiss, courts are generally limited to "considering the sufficiency of the allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448 (4th Cir. 2011)).  A court may consider extrinsic documents attached to a motion to dismiss where the document is "integral to and explicitly relied on in the complaint," and when "the plaintiffs do not challenge the [document's] authenticity." *Id.* at 607 (quoting *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).  A document is "integral" to a complaint where "its very existence, and not the mere information it contains, gives rise to the legal rights asserted" or where the legal rights at issue in the complaint rely "'heavily upon its terms and effect.'"  *Reamer v. State Auto. Mut. Ins. Co.*, No. 20-cv-2987, 2021 WL 3725385 *2 (D. Md. Aug. 23, 2021); *Goines v. Valley Cmty. Servs. Bd.,* 822 F.3d 159, 166 (4th Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  Although courts may consider relevant, un-pled facts subject to judicial notice, given the stage of the case, judicially noticed facts must be construed in a light favorable to the plaintiff.  *Zak,* 780 F.3d at 607.  In view of the foregoing, Exhibits 4 and 5 to Plaintiff's opposition have not been considered.

amendment (collectively the "lease").  (ECF 9.)  The Robinwood Medical Campus is owned by Meritus.  The complaint alleges that the lease contains a restrictive covenant by which Meritus agreed that no other part of the medical campus would be used for the operation of a pharmacy, so that Walgreens faced no direct competition.  (ECF 1.)  In 2021, Meritus sold Suite 105 to Water Street Investments, LLC, while retaining ownership of the rest of the medical campus.  Walgreens alleges that Meritus violated the restrictive covenant by opening a pharmacy within the medical campus in direct competition with Walgreens.  (ECF 1.)  In particular, Walgreens maintains that the restrictive covenant attaches to and runs with the land, and that the sale of Suite 105 has no effect on the restrictive covenant.  (ECF 1.)  Walgreens brings two counts of breach of contract and seeks a declaratory judgment and specific performance. (ECF 1.)

**STANDARDS**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion for dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. Twombly,* 550 U.S. 544, 556 (2007)).  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  At the motion to dismiss stage, all reasonable inferences are drawn in favor of the Plaintiff.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).  The court assumes all well-pled facts to be true on a motion to dismiss.  *Id.*

**ANALYSIS**

**I.   Restrictive Covenant**

Section 35 of the lease provides:

Landlord may transfer all or part of its interest in the Premises and this Lease without consent of Tenant, at any time and from time to time. If Landlord transfers its estate in the Premises, then Landlord shall be relieved of all its obligations of Landlord thereafter arising expressed in this Lease or implied by Law.

(ECF 9 Ex. A.)

Meritus argues that it was released of its lease obligations, including the restrictive covenant, upon the sale of Suite 105 and, therefore, Walgreens cannot sustain its contractual claims against Meritus as a matter of law. In response, Walgreens argues that the restrictive covenant runs with the land. If the covenant runs with the land, as the owner of the rest of the Robinwood Medical Campus, Meritus is bound by the terms of the covenant even if relieved of its lease obligations with respect to Suite 105.

The challenged language reads:

Exclusive. Landlord covenants and agrees that, during the Term and any extensions or renewals thereof, no portion of the Building which is owned, leased or controlled directly or indirectly by Landlord or any of its parents, subsidiaries or affiliates nor any other buildings on the Robinwood medical campus (including, without limitation, Meritus Medical Center) which are owned, leased or controlled directly or indirectly by Landlord or any of its parents, subsidiaries or affiliates ("Landlord's Property"), will be used for the operation of an outpatient retail pharmacy (including, without limitation, specialty pharmacy) and/or mail order pharmacy.

(ECF 1 Ex. A.)

"Covenants affecting property are, even when running with the land, nonetheless contractual in nature." *Burns v. Scottish Development Co. Inc.*, 141 Md. App. 679, 695 (2001) (quoting *Colandrea v. Wilde Lake Community Ass'n*, 361 Md. 371, 395 (2000)). Covenants are interpreted similarly to contracts, where the court is governed by the intention of the parties as it appears on the instrument. *Id.* "If the meaning of the instrument is not clear from its terms, 'the circumstances surrounding the execution of the instrument should be considered in arriving at the intention of the parties, and the apparent meaning and object of their stipulations should be

3

gathered from all possible sources.'" *Id.* at 695-96 (quoting *Live Stock Co. v. Rendering Co.*, 179 Md. 117, 122 (1941)).

A covenant running with the land is distinguished from a personal covenant, which only affects the parties to the agreement.  25 A.L.R.3d 897 § 1(a).  To determine whether a restrictive covenant runs with the land, Maryland courts consider: (1) whether the covenant touches and concerns the land, (2) whether the original covenanting parties intended the covenant to run with the land, (3) whether there was privity of estate, and (4) if the covenant was in writing.  *City of Bowie v. Mie Properties, Inc.*, 398 Md. 657, 678 (2007) (quoting *Mercantile-Safe Deposit and Trust Co. v. Mayor and City Council of Baltimore,* 308 Md. 627, 632 (1987)).  Here, requirements three and four are easily satisfied, as the parties were in direct privity due to the lease, and because the restrictive covenant was memorialized in writing.

### a.  Touch and Concern

For a covenant to touch and concern the land, "the thing required to be done will affect the quality, value, or mode of enjoying the estate conveyed, and thus constitute a condition annexed, or appurtenant to it."  *Mercantile,* 308 Md. at 632 (internal citations omitted).  Maryland courts apply a benefit/burden analysis such that the requirements of touch and concern are met when the covenant renders the convenantor's interest in the land less valuable or, alternatively, where the covenantee's interest in the land is rendered more valuable.  *Id.*

Walgreens argues that the restrictive covenant touches and concerns the land in this case because

> This restriction limits Meritus' ability to develop the campus and limits the pool of potential lessees for other buildings and spaces within the campus. In turn, the Restrictive Covenant benefits, and renders more valuable, Walgreen's leasehold estate because the tenant can operate a retail pharmacy without competition on the Robinwood medical campus.

(ECF 15 p. 12.)   Walgreens further points to the provision that the lease "shall also bind and benefit the successors and assigns of the respective parties hereto," indicating that the covenant touches and concerns the land.  (ECF 15 p. 12.)  *See Mercantile*, 308 Md. at 635-36 ("The Maryland cases, therefore, give critical effect to the presence or absence of language binding successors and assigns.  If these words are present, as they are here, the covenant is one running with the land or the functional equivalent thereof.")

Meritus maintains that because the restrictive covenant specifies that it runs only "during the Term," it does not touch and concern the land.  (ECF 9.)  Walgreens mounts two responses to this argument.  First, it maintains that "because the need to protect Walgreens' business interests terminates upon the termination of the still-ongoing lease…, it would make no sense for the restrictive covenant to survive the termination of the lease."  (ECF 15 p. 14.)  Second, "Meritus' assertion, if true would be reason to hold that no covenant in a lease could run with the land."  *Id.* Because *Mercantile* involved a lease covenant, Walgreens argues that Meritus' contention lacks merit.

The touch and concern element is satisfied in this case.  The restrictive covenant benefits Walgreens, as its operation means Walgreens will not face direct competition from other pharmacies, making its operation of a pharmacy in that suite more valuable.  While a restrictive covenant need only benefit the covenantee *or* burden the convenantor, the restrictive covenant also burdens Meritus, as Meritus is limited to what types of businesses can operate in the building it owns.

### b.  Intent

The intent requirement "focuses on the subjective state of mind of the original covenanting parties."  *Mercantile,* 308 Md. at 637 (quoting *Gallagher v. Bell,* 69 Md. App. 199, 212 (1986)).

Subjective intent is typically a question of fact.  *Id.*  ("[S]ubjective intent ordinarily is a factual question inappropriate for decision on motion."); *see also Gallagher,* 69 Md. App. at 212 ("Subjective intent is generally a question of fact for resolution by a jury, and, thus, if the issue is in dispute, it is ordinarily inappropriate for a court to decide it on motion.") The use of the word "assigns" is "virtually conclusive evidence of intent that the covenant run with the land, absent specific language to the contrary."  *Mercantile,* 308 Md. at 639.

In *Mercantile*, the court found intent manifested in the lease itself, where "[t]he agreements to restore in these long-term leases would be of little value to Mercantile if they were only personal to Hochschild's, the original lessee, and not binding on a successor in interest such as Supermarkets General."  *Id.* at 637-38.  The *Mercantile* court found the facts of *Union Trust Co. of Maryland v. Rosenburg* instructive, where the court held "it would be an illogical conclusion to hold that it was the intention of the original mortgagors to provide that their heirs, successors, or assigns should come into possession of the property and enjoy the benefit of the emoluments accruing therefrom, without at the same time incurring the obligations incident to its maintenance."  171 Md. 409, 425 (1937).

Plaintiff argues that, similar to the facts in *Mercantile*

Meritus' promise to restrict the use of its surrounding properties would be of little value to Walgreens if the promise was only "personal" to Meritus, and not binding on Meritus and any subsequent owner of the properties burdened by the Restrictive Covenant. Walgreens bargained for and required the exclusive right to operate a retail pharmacy on the Robinwood medical campus for the duration of its Lease, which term is ongoing.

(ECF 15 p. 13.)

Walgreens further maintains that, because the lease is binding upon the "successors and assigns of the respective parties hereto," the parties intended for "future owners of the burdened properties" to be bound by the restrictive covenant.  *Id.*  Meritus contends that the inclusion of the

words "during the Term" in the restrictive covenant demonstrates that "the intentions of the parties were clear that the restrictive covenant was not to run with the land, but rather through the term of the parties' contractual relationship."  (ECF 9 p. 9.)  Meritus further argues that, if the parties intended for the covenant to run with the land, "the First Amendment would have contained express language to that effect, i.e. 'the aforementioned covenant shall be construed to be a covenant running with the land;' 'Section 35(a) of the Original Lease shall be superseded by the terms and conditions of Section 3.i. of the First Amendment to the Lease.'"  (ECF 16 p. 4.)

There is a dispute regarding whether the parties intended the restrictive covenant to run with the land.  Walgreens asserts the lease evinces the parties' intent that the restrictive covenant run with the land through use of the word "assigns" and due to the circumstances of the agreement.  Meritus argues the opposite, claiming use of the word "term" demonstrates intent that the covenant co-terminate with the lease.  The parties' subjective intent in this instance is inappropriate for resolution on a motion to dismiss.[2]

Assuming the truth of Walgreens' allegations that Meritus opened a pharmacy in violation of the restrictive covenant, that the restrictive covenant "attaches to and runs with the land," "binds the land and Meritus, which owns the land and the building where Meritus Pharmacy is located," and "burdens and restricts the use of the land and the property," Walgreens has adequately alleged facts to support its breach of contracts claims. (ECF 1.)  Namely, Walgreens has alleged facts demonstrating that there was an agreement between the parties, that the agreement's covenant runs with the land beyond the release of Meritus' obligations, and that Meritus breached the agreed to restrictive covenant.  The Motion will be denied on these grounds.

---

[2] Even were the court inclined to resolve the question of intent on the Motion, at this stage, the court credits Walgreens' argument that it would be illogical for the exclusive right to operate a pharmacy not to run with the land; and inclusion of the word "term" is not dispositive, as Walgreens continues to lease Suite 105.

II.     **Specific Performance**

Meritus argues that Walgreens failed to plead a claim entitling it to the remedy of specific performance. (ECF 9.)   Specifically, Meritus contends that Walgreens has not alleged that monetary remedies are insufficient, arguing "Walgreens' Complaint exclusively alleged that the harm posed by the opening of the Meritus' pharmacy was the threat of lost profits, which is insufficient under Maryland law to sustain a claim for specific performance."  (ECF 16 p. 11.)

Specific performance is available where "more traditional remedies, such as damages, are either unavailable or inadequate." *Archway Motors, Inc. v. Herman,* 37 Md. App. 674, 681 (1977). Maryland courts have routinely held that covenants that affect property are subject to specific performance.  *Colandrea*, 361 Md. at 396.  However, dismissal is appropriate where a plaintiff "has not pleaded any facts supporting his position that specific performance – as opposed to monetary damages – is the necessary remedy."  *Heravi v. Gaming Network Solutions*, *LLC*, No. PWG-15-1178, 2016 WL 3753156 *6 (D. Md. July 13, 2016).

The complaint alleges that Walgreens will suffer "irreparable harm" and that "the operation of the Meritus Pharmacy poses a significant and substantial threat to Walgreens' business because it directly competes with and is substantially similar to the Walgreens pharmacy."[3]  (ECF 1 p. 7-8.)  Unlike the plaintiff in *Heravi*, who alleged only that "specific performance is an appropriate potential remedy," Walgreens has pled facts to demonstrate that monetary damages are inadequate where the Meritus Pharmacy continues to compete for business with Walgreens.  *Heravi*, 2016 WL 3753156 at *6; *See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048, 1055 (finding a loss of customers constitutes irreparable, non-compensable harm).

---

[3] Meritus argues that Walgreens' opposition "for the first time alleges monetary damages will be inadequate."  (ECF 16 p. 13.)  Meritus goes on to argue that these allegations were not pled in the complaint and cannot be considered by the court. While the court agrees that allegations outside the complaint are not to be considered, the complaint adequately alleges, or one can reasonably infer, that monetary damages are insufficient.

Walgreens further avers, based on its factual allegations, that the harm flowing from the alleged continuing violation of the restrictive covenant is an ill fit for monetary damages because the violation is ongoing and indefinite.[4]  Accepting these allegations as true, Walgreens sufficiently pleads an action entitling it to specific performance.  The Motion will be denied on these grounds.

## III.    Permanent Injunction

Meritus also argues that Walgreens has not sufficiently pled facts to warrant injunctive relief.  Normally, to obtain an injunction, a plaintiff must plead facts demonstrating "(1) that it has suffered an irreparable injury; (2) that remedies unavailable at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Legend Night Club v. Miller*, 637 F.3d 291, 297 (4th Cir. 2011) (internal citations omitted).  Meritus contends Walgreens has not adequately pled the first two elements to obtain an injunction and has left the third and fourth elements out of its complaint entirely.  (ECF 9).

Meritus misstates the requisite conditions for issuance of a permanent injunction to enforce a restrictive covenant.  Under Maryland law, "to obtain a permanent injunction to enforce a restrictive covenant, a plaintiff need only make the showing required to obtain specific performance." *Redner's Markets, Inc. v. Joppatowne G.P. Ltd. Partnership*, No. RDB-11-1864, 2013 WL 2903285 *5 (D. Md. June 13, 2013) (internal citations omitted).  Where a restrictive covenant has been breached, Maryland courts will analyze the circumstances and equities of each party.  *Id.*

---

[4] Meritus argues that, because the complaint includes a request for monetary damages, "this creates the inference that monetary damages, a remedy at law, would indeed be sufficient to cure any purported harm Walgreens might have suffered." (ECF 9, p. 12.) A plaintiff, however, may ask for additional relief "supplementary to specific performance." *Miller v. Talbott*, 239 Md. 382, 393 (1965).

As indicated in the previous section, Walgreens has sufficiently pled facts that it will suffer irreparable harm due to the continuing operation of a competing pharmacy in the same location sufficient to support specific performance relief.   Meritus argues that entering a permanent injunction would be contrary to the interests of the public and public policy.  *See Ruhl v. F. A. Bartlett Tree Expert Co.*, 245 Md. 118, 123-24 (1967) (holding that a restrictive covenant cannot disregard the interests of the public or violate public policy).   Specifically, Meritus urges that because it is a non-profit hospital, any money spent at the pharmacy is reinvested in the hospital. It also claims that having a pharmacy in the hospital is in the public's best interest for convivence for those frequenting the hospital.

At this stage in the litigation, the court need not decide whether the balance of equities supports entry of a permanent injunction.[5]  Doing so requires an in-depth analysis of the facts and is therefore inappropriate for resolution on a motion to dismiss.  Walgreens has sufficiently pled facts to entitle it to demand specific performance.  The Motion will be denied on these grounds.

**CONCLUSION**

For the reasons set forth herein, Defendant Meritus Medical Center, Inc.'s Motion to Dismiss (ECF 9) will be denied.  The court will issue an accompanying order in accordance with this memorandum opinion.

/S/

_____

Julie R. Rubin
United States District Judge

---

[5] Walgreens mounts several arguments that it will face greater hardship than would Meritus should the pharmacy remain open.  (ECF 15.)